**IRVIN INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

Civ. A. No. 85–206.

United States District Court, District of Columbia.

April 3, 1985.

Opinion Vacated Pursuant to Stipulation of Dismissal
July 8, 1985.

Lanny J. Davis, Richard J. Conway, Patton, Boggs & Blow, Washington, D.C., for plaintiff.

Deborah A. Robinson, Asst. U.S. Atty., Dept. of Justice, Frank J. Sando, Dept. of the Army, Washington, D.C., for defendants.

## MEMORANDUM ORDER DENYING MOTION TO DISMISS

BARRINGTON D. PARKER, District Judge.

This controversy concerns the procurement process relating to the government's requirements for Inflatable Retarder Assemblies ("assemblies"), a specialized parachute which is a component of a bomb used by the armed services.[1] The government and Goodyear contracted originally in May, 1984 for the production of assemblies to be delivered in 1985. The 1984 contract contained an option provision for additional assemblies to be produced by Goodyear for delivery in 1986.

### FACTS

On January 18, 1985, plaintiff, Irvin Industries, Inc. ("Irvin"), filed this action seeking injunctive and declaratory relief

---

1. Assemblies are classified as restricted products by the government and thus a producer of the product must be authorized as a mobilization base producer. 10 U.S.C. § 2304(a)(16) and 48 C.F.R. 15.217.

arising from the exercise of the option in the procurement contract between the Department of Defense and the Goodyear Aerospace Corporation ("Goodyear"). The defendants are the United States, the Secretary of Defense, the Secretary of Army, and an Army procurement official. Irvin alleges that the defendants acted arbitrarily, unreasonably and contrary to law in exercising the option with Goodyear because the option was signed prematurely and was not subject to competition. Irvin also contends that the government's failure to provide it with a complete technical data package enabling it to submit an accurate competitive proposal and the Government's decision to procure on a sole source basis with Goodyear and without competition were unlawful actions.

Plaintiff claims that in 1984 it decided to attempt to compete directly with Goodyear to fulfill the government's needs for assemblies. Prior to the time the government exercised the Option, Irvin alleges that it had several contacts with the government expressing its desire to compete by submitting a bid to produce the assemblies and to become qualified as a second mobilization base producer for the assemblies. Plaintiff asserts that efforts to compete were hampered by the government's failure to provide it with a complete technical data package. Despite the claim that it obtained only an incomplete technical data package and the fact that the Goodyear Option was exercised by the government on November 13, 1984, the plaintiff submitted a detailed bid to the government on November 27, 1984 to produce some of the assemblies. Although Irvin states that its proposal would have resulted in a significant monetary savings to the government, it claims that its efforts to compete were effectively foreclosed by the government's premature exercise of the Goodyear Option.[2] Irvin is seeking a review of the administrative decisions relating to the procurement of the

assemblies and an order enjoining any activity under the Option.

The defendants seek to dismiss this action on the grounds that the plaintiff lacks standing, the Court lacks subject matter jurisdiction, and the plaintiff's failure to join an indispensable party. (Fed.R.Civ.P. 12(b)(1), 12(b)(7), and 19(a).

## ANALYSIS

■ Irvin has standing to challenge the government's actions relating to the exercise of the option. Our circuit court has set forth the criteria for determining if a party has standing to challenge the award of a government contract.

> First, the party must allege that the challenged action has caused him injury in fact.... The plaintiff must further allege that the agency has acted arbitrarily, capriciously, or in excess of its statutory authority, so as to injure an interest that 'is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' ... Finally, there must be no 'clear and concurring' indication of a legislative intent to withhold judicial review.

*Ballerina Pen Co. v. Kunzig*, 433 F.2d 1204, 1207 (D.C.Cir.1970) (*citing Association of Data Processing Serv. Organizations v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970)).

The plaintiff has satisfied the several criteria for standing. Irvin has submitted persuasive affidavits indicating that it has and will suffer injury due to the award of the Goodyear Option. (Complaint at Exhibit 1.)[3] Preclusion of the opportunity to compete constitutes injury. *Aero Corp. v. Dept. of the Navy*, 540 F.Supp. 180, 214 (D.D.C.1982). Further, the plaintiff's contentions concerning the exercise of the Op-

---

**2.** Irvin states that the Option, by the terms of the original contract, could have been exercised as late as March 31, 1985.

**3.** Plaintiff is currently a subcontractor of Goodyear's, manufacturing a component for the assemblies. Plaintiff claims to have suffered harm due to receiving fewer orders from Goodyear for its component parts.

tion are within the "zone of interests" protected by the government regulations. The regulations found in 48 C.F.R. § 17.207 (options) and 48 C.F.R. § 15.105(b) (prior noncompetitive contracts) seek to encourage competition in the procurement process. *Cf. Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 842 (D.C.Cir. 1982) (default regulations not intended to foster competition). *See also Aero Corp. v. Department of the Navy*, 493 F.Supp. 558, 570 (D.D.C.1980) (after holding that a sole-source contract was not unreasonable, ordered that before exercising an option, the feasibility of competition should be examined). Finally, the defendants have not provided a clear indication of legislative intent to preclude judicial review of the exercise of an option on a government contract.

■ Defendants argue that sovereign immunity bars review of plaintiff's claims in Counts II (failure to provide technical data package) and Count III (unlawful administrative action in making Goodyear the sole supplier). However, the plaintiff seeks only injunctive relief and sovereign immunity as such is not a bar when relief of that nature is sought. *Dronenburg v. Zech*, 741 F.2d 1388, 1390 (D.C.Cir.1984).

■ Defendants assert that plaintiff's contentions concerning the technical data package should have been addressed in a suit under the Freedom of Information Act, 5 U.S.C. § 552. Irvin, however, contends that the failure to provide the information was a violation of government regulations which encourage competition in procurement, 48 C.F.R. 15.105, and thus is reviewable under the arbitrary and capricious standard. Where, as here, the plaintiff asserts that the failure to provide information is an independent violation of a federal regulation and unreasonable, the decision to withhold the information is reviewable under 5

U.S.C. § 706 even though the plaintiff has not framed its complaint for relief under FOIA. *Cf. Gull, supra*, 694 F.2d at 841 n. 2 ("It is well settled ... that actions of a federal agency alleged to be arbitrary and capricious violations of the statutes and regulations governing the *awards* of federal contracts are subject to judicial review under § 706(2)(A) of the Administrative Procedure Act (APA).") (emphasis in original).

■ Defendants also contend that agency decisions made pursuant to the mobilization base authority contained in 10 U.S.C. § 2304(a)(16) are nonreviewable "final actions" as set forth in 10 U.S.C. § 2310(b). The plaintiff, however, is not seeking review of the decision to contract the production of assemblies on a negotiated rather than advertised basis under 10 U.S.C. § 2304(a) or the determination that Goodyear is a mobilization base producer. Rather, Irvin seeks a determination that the decision to make Goodyear a sole source supplier without discussing other proposals, thereby failing to encourage competition in negotiated procurements, was unreasonable in light of 10 U.S.C. § 2304(g). An alleged violation of § 2304(g) is reviewable by a court.[4] *Aero Corp.*, 540 F.Supp. at 201. Thus, since plaintiff has standing to bring this action, the agency decisions alleged to be arbitrary and capricious in Counts II and III of the complaint are subject to judicial review.

■ Finally, the defendants claim that because plaintiff has failed to join Goodyear as a party, this action should be dismissed. The plaintiff contends that Goodyear is on notice of these proceedings and of the proceedings before the General Accounting Office. If it becomes apparent to the Court that Goodyear is a necessary party under Fed.R.Civ.P. 19, that company

---

**4.** The defendants cite a Comptroller General decision, National Presto Industries, Inc., B–195679, 79–2 CPD (December 19, 1979), for the proposition that an award of an industrial mobilization contract on a sole source basis is unreviewable. In that case, a *particular* sole source contract was upheld and the concept and need

for some sole source contracts pursuant to 10 U.S.C. § 2304(a)(16) was recognized. That decision, however, did not discuss the applicability of § 2304(g). Moreover, it is not clear that the Comptroller General held that judicial review was precluded, but only that an abuse of discretion standard was to be employed.

may be joined at a later date. *See Aero Corp. v. Dept. of the Navy,* 493 F.Supp. 558, 569 (D.D.C.1980). Further, if Goodyear believes that its interests are being threatened by this litigation, it may seek intervention under Fed.R.Civ.P. 24.

In accordance with the above, it is this 3rd day of April, 1985,

### ORDERED

That defendants' motion to dismiss is denied.

